IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | | |
|---|---|---|---|
| WALTER F. GREEN, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | Civil Action No. 5:11cv032 | |
| v. | ) | | |
| | ) | By: | Michael F. Urbanski |
| CITIMORTGAGE, INC. et al, | ) | | United States District Judge |
| | ) | | |
| Defendants | ) | | |

## MEMORANDUM OPINION

Plaintiff, Walter F. Green ("Green") filed this action on April 1, 2011, against defendants CitiMortgage, Inc. ("CitiMortgage"), and Wachovia Mortgage Corporation ("Wachovia") seeking to prevent the foreclosure of his home in Harrisonburg, Virginia.

Green claims that CitiMortgage's conduct in connection with a recent loan modification program violates the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"), the Virginia Consumer Protection Act, VA. CODE ANN. § 59.1-196, et seq. ("VCPA"), and the Lanham Act, 15 U.S.C. § 1125, et seq. Green's Complaint also asserts claims entitled "Declaratory Judgment to Quiet Title" and "Motion for Lis Pendens" and seeks an injunction to stop any foreclosure. Additionally, Green has filed a motion for summary judgment asserting a new claim that his 2002 Note with Wachovia was usurious and unlawful under North Carolina law because it included a five percent late fee. Both CitiMortgage and Wachovia have filed motions to dismiss.[1] All of these issues have been fully briefed, and the court heard oral argument on June 17, 2011.

---

[1] By Order dated November 21, 2011, the court granted Green's request to voluntarily dismiss his claim against Wachovia, without prejudice.

# I

The Amended Complaint alleges that Green owns a home in Harrisonburg, Virginia, as his principal residence. Green purchased his home in 2002 and financed his purchase by means of a $157,000 loan with Wachovia. On May 16, 2002, Green signed a Note and Deed of Trust securing this loan.

A copy of the May 16, 2002 Note, executed by Green in favor of Wachovia, is attached as Exhibit B to CitiMortgage's Memorandum in Support of its Motion to Dismiss. (CitiMortgage's Memorandum in Support of Motion to Dismiss, Ex. B, Dkt. # 13-2.) Page three of the Note contains an undated blank "Without Recourse" endorsement by Wachovia's Assistant Vice President, Karen Davis. (Id. at 3.)[2] Wachovia has provided an affidavit from Mary Ellen Brust, its Vice President for Loan Documentation, that the Green loan was sold prior to November 1, 2002 (Wachovia's Second Reply Brief, Ex. A, Dkt. # 32-1), and a "screen shot" from its computer records confirming that it sold the loan in 2002. (Wachovia's First Reply Brief, Ex. 2, Dkt. # 25-2.) Wachovia also supplied a document from the MERS Services Identification System indicating that the Green loan presently is owned by Fannie Mae and serviced by CitiMortgage. (Wachovia's Memorandum in Support of Motion to Dismiss, Ex. A, Dkt. # 9-1.)

The Deed of Trust was signed by Green alone, but it lists the borrower as "Walter F. Green IV A Married Man." (Amended Complaint, Ex. B, Dkt. # 3-2.) The Deed of Trust was filed in the Rockingham County Circuit Court Clerk's Office and recorded on May 21, 2002. Neither Wachovia nor CitiMortgage has filed any documents in the Rockingham County Circuit Court reflecting the transfer of the 2002 Note.

---

[2] The original Note, with the blank endorsement, was produced in open court on June 17, 2011, by CitiMortgage, its current holder.

In late 2009, Green became unemployed. The record contains a November 3, 2009 offer from CitiMortgage to Green and his wife to participate in a Home Affordable Modification Trial Period Plan ("TPP").³ The CitiMortgage offer states: "If you qualify under the federal government's Home Affordable Modification Program and comply with terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure." (Green's Brief in Opposition to Motions to Dismiss, Ex. A, Dkt. # 23-1.)⁴

On November 14, 2009, Green and his wife executed the CitiMortgage TPP. (Green's Brief in Opposition to Motions to Dismiss, Ex. B, Dkt. #23-2.) The first paragraph of the TPP provides as follows:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."

(Id. at 1.)

Paragraph 2.F. of the TPP provides that if (1) CitiMortgage does not provide a Modification Agreement; (2) Green does not make the trial period payments; (3) CitiMortgage determines that Green's representations are no longer true and correct; or (4) Green does not provide all of the information and documentation required by CitiMortgage; "the Loan

---

³ Although the Note and Deed of Trust only reference Walter F. Green IV, the CitiMortgage Home Affordable Modification Trial Period Plan was directed to Green and his wife, Judith.

⁴ The federal Home Affordable Modification Program ("HAMP") is a program established by the Treasury Department under the Troubled Asset Relief Program ("TARP"). The purpose of HAMP was to help "3 to 4 million at-risk homeowners – both those who are in default and those who are at imminent risk of default" avoid foreclosure "by reducing monthly payments to sustainable levels." (HAMP Suppl. Directive 09-01, at 1.)

Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents . . . ." (Id. at 2.)

Paragraph 2.G. of the TPP provides as follows:

> G. I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.

(Id. at 3.)

Under the TPP, Green's monthly mortgage payment was reduced to $940.61. Although paragraph 2 of the TPP only references four monthly trial period payments of $940.61 from December 1, 2009, to March 1, 2010, Green alleges that he made payments to CitiMortgage under the TPP for another year, through February 2011. In fact, Green claims he paid the amounts CitiMortgage instructed him to pay and did not miss a payment.

Subsequent to the execution of the TPP, the Greens received an undated letter from CitiMortgage, stating as follows:

> You did it! By entering into a Home Affordable Modification Program ("HMP") Loan Workout Plan you have made your payment more affordable.

(Green's Brief in Opposition to Motions to Dismiss, Ex. C, Dkt. # 23-3.)[5]

With regard to the execution of the TPP and his contacts with CitiMortgage over the ensuing thirteen months, Green's Amended Complaint alleges as follows:

> 21. In December, 2009, "counselors["] from ["]Workable Solutions$^{SM}$", an unregulated subsidiary of Citimortgage Inc.,

---

[5] The reference in this document to "HMP Loan Workout Plan" is a mystery. The term "Loan Workout Plan" appears as a header at the top of pages 2-4 of the TPP, but is otherwise not defined therein. Also, the fact that the confirming letter noted above refers to both a "Loan Workout Plan" and a "Trial Period Plan" suggests that they are different documents.

4

instructed Green to lower payments during a HAMP loan modification period and entered into a Service Provider Agreement and stated if Green timely paid and provided all documentation required, the HAMP loan modification would result in the recalculated permanent lower payment. The trial modification period was to last no more than 90 days. Green made all payments and supplied all requested documents.

22. After expiration of 90 days, Workable Solutions$^{SM}$, an unregulated subsidiary of Citimortgage Inc., repeatedly assured Green that his loan modification was forthcoming but he must continue to make the lower payments and supply any additional documentation necessary. These representations were in over fifty telephone calls and other correspondence to and from Workable Solutions$^{SM}$.

23. Workable Solutions$^{SM}$, an unregulated subsidiary of Citimortgage Inc. and Citigroup Inc. was in fact, telemarketers who would refuse to disclose their last names, addresses, telephone numbers, or any other identification so that their misrepresentations to Green that loan modification under HAMP was imminent, could not be corroborated.

(Amended Complaint, Dkt. # 3, at ¶¶ 21-23.)

On December 20, 2010, CitiMortgage wrote Green requesting additional information needed for "a *Workable Solutions$^{SM}$* review of your loan." (Green's Brief in Opposition to Motions to Dismiss, Ex. E, Dkt. # 23-5 (emphasis in original).) The letter states that if the requested information is not received within seven days, "we will consider the matter closed and will proceed accordingly." (Id.)

In all, Green made thirteen monthly payments under the TPP program. Nevertheless, on February 25, 2001, CitiMortgage returned Green's last payment, stating that "[w]e are returning your check #725 for $940.00 because it was less than the full amount due to bring your account current." (Amended Complaint, Ex. A, Dkt. # 3-1.) Green alleges that despite his compliance with the terms of the TPP, CitiMortgage has taken the position that his thirteen monthly payments of $940 "actually increased an alleged arrearage, which ultimately was the basis for

5

CitiMortgage Inc. to claim default." (Amended Complaint, Dkt. # 3, at ¶ 25.) Accordingly, Green alleges that CitiMortgage has "ignored its contractual obligation to modify [his] loan permanently." (Id. at ¶ 26.)

## II

To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir.1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

The Supreme Court outlined its two-pronged approach as follows:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

Id. Each of Green's claims will be assessed in keeping with this standard.

6

### A. Truth in Lending Act ("TILA")

Green first claims that his participation in CitiMortgage's TPP program was subject to the protections afforded borrowers under TILA. Green alleges that defendants "failed to deliver to [him] the information and rescission forms together with a statement containing the material disclosures required under 15 U.S.C. § 1635(a). 12 C.F.R. § 226.23(b)(1)(a)." (Amended Complaint, Dkt. # 3, at ¶ 29.) Plaintiff argues that "[b]y incorporating the May 14, 2002, 'Loan Documents' and modifying these documents into the extension of credit [CitiMortgage] was required to provide TILA disclosures." (Green's First Reply Brief and Motion for Summary Judgment, Dkt. # 28, at 8.) Plaintiff also alleges that he exercised his right to timely rescind the TPP program when he "notified each defendant of his intent to rescind the alleged deed of trust in his primary dwelling on March 16, 2011." (Amended Complaint, Dkt. # 3, at ¶ 30.)

CitiMortgage counters that TILA is inapplicable. CitiMortgage argues that while certain TILA disclosures may be required in connection with a refinancing, no refinancing occurred here. CitiMortgage points to the TPP documents, which expressly state "all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents." (Green's Brief in Opposition to Motions to Dismiss, Ex. B, Dkt. # 23-2, at ¶ 4.D.) CitiMortgage also argues that Green's rescission claim is "barred by the express provisions of TILA," which provide that an obligor's right of rescission expires three years following the date of consummation of the transaction, notwithstanding the fact that any information, forms, or required disclosures have not been delivered to the obligor. (CitiMortgage's Memorandum in Support of Motion to Dismiss, Dkt. # 13, at 5 (citing 15 U.S.C. § 1635(f)).)

7

TILA is a consumer protection statute that aims to "avoid the uninformed use of credit . . . ." 15 U.S.C. § 1601(a). TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559 (1980). The statute "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998). "Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying [c]ongressional purpose is to be effectuated." N.C. Freed Co., Inc. v. Bd. of Governors of the Fed. Reserve Sys., 473 F.2d 1210, 1214 (2d Cir. 1973)). Creditors who fail to comply with TILA's disclosure requirements are subject to civil liability. See 15 U.S.C. § 1640(a). However, despite its broad protections, TILA "is not a general prohibition of fraud in consumer transactions or even in consumer credit transactions. Its limited office is to protect consumers from being misled about the cost of credit." Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 285 (7th Cir. 1997).

TILA disclosure requirements do not apply to forbearance or loan modification agreements that simply reduce the interest rate and payment schedule of a loan. Norton-Griffiths v. Wells Fargo Home Mortgage, 2011 WL 61609, at *5-6 (D. Vt. Jan. 4, 2011). In Norton-Griffiths, the homeowners argued that the bank violated TILA by issuing a Forbearance Agreement and Loan Modification Agreement without TILA disclosures. Id. at *4. The homeowners contended that TILA disclosures were required because the subsequently issued agreements modified their residential mortgage. Id. As here, the bank in Norton-Griffiths entered into a Forbearance Agreement in response to the homeowners' request to modify their home mortgage payment. Id. at *1. Similar to the TPP in this case, the Forbearance Agreement

8

in Norton-Griffiths provided for a temporary reduction in the monthly mortgage payments during a four-month trial period. Id. Upon the homeowners' successful completion of the trial period, the bank promised to consider approving a loan modification. Id. The homeowners in Norton-Griffiths successfully completed the four-month trial period but never signed a Loan Modification Agreement. Id. at *2-3.

The Vermont district court concluded that the temporary reduction of mortgage payments did not implicate the disclosure requirements of TILA, reasoning as follows:

> "Generally, events subsequent to a consumer loan transaction do not affect the validity of the initial disclosures or require the creditor to make further disclosures." Katz v. Cal-Western Reconveyance Corp., 2010 WL 424453, at *4 (N.D. Cal. Jan. 27, 2010) (citing 15 U.S.C. § 1634). Moreover, for TILA purposes, "disclosure" is not a general, amorphous obligation but "a term of art which refers to the manner in which a creditor must convey the information which Congress deemed basic to an intelligent assessment of a credit transaction." Underwood v. Am. Home Mortg. Corp., 66 B.R. 656, 660 (Bankr. W.D. Va. 1986).
>
> Here, Plaintiffs do not claim that the Forbearance Agreement was a refinancing, that they were advanced new monies, or that their Residential Mortgage was satisfied and released. Correspondingly, neither Defendant's cover letter, nor the Forbearance Agreement state or suggest that the Forbearance Agreement was intended to satisfy and replace Plaintiffs' Residential Mortgage, that Plaintiffs were receiving a further extension of credit, or that Plaintiffs' interest rate had been modified. Instead, the Forbearance Agreement merely temporarily modified the amount of Plaintiffs' monthly mortgage payment during a four month trial period. This temporary modification did not require TILA disclosures. See Hart v. GMAC Mortg. Corp. (In re Hart), 246 B.R. 709, 738 (Bankr. D. Mass. 2000) ("[T]he 1997 forbearance agreement and the repayment agreement with respect to the principal reduction do not constitute refinancings that would require new [TILA] disclosures. This is because the existing obligation was not satisfied or replaced by either agreement."). Accordingly, while it is true that Defendant could have been more forthcoming with information and more responsive to Plaintiffs' inquiries, Plaintiffs fail to identify any factual or legal basis for concluding that

9

> Defendant's handling of the Forbearance Agreement was a violation of *federal law*. Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant's motion to dismiss Plaintiffs' TILA claim with regard to the Forbearance Agreement must therefore be GRANTED.

Id. at *5 (emphasis in original).

Green's TILA argument regarding the TPP is identical to the claim rejected by the court in Norton-Griffiths regarding the temporary Forbearance Agreement. A number of other courts have followed the Norton-Griffiths decision. Perez v. Wells Fargo Bank, N.A., 2011 WL 3809808, at *13-14 (N.D. Cal. Aug. 29, 2011); De Jose v. EMC Mortgage Corp., 2011 WL 1539656, at *6-8 (N.D. Cal. Apr. 18, 2011); Gordon v. Home Loan Ctr., LLC, 2011 WL 1261179, at *5 (E.D. Mich. Mar. 31, 2011); Pickle v. Wash. Mut. Bank, 2011 WL 837867, at *3-4 (C.D. Cal. Mar. 1, 2011). Considering the language of the statute, the court agrees with the reasoning in Norton-Griffiths and concludes that Green has no claim for damages under TILA.

Green also claims that he has a right to rescission of timely mortgage under TILA and timely provided notice of rescission on March 16, 2002. CitiMortgage contends that the notice of rescission was untimely, coming more than three years after the 2002 execution of the Note and Deed of Trust. Following Norton-Griffiths, the court does not believe that TILA applies to the 2009 execution of the TPP, nor does it resuscitate Green's ability to rescind his 2002 mortgage. Moreover, a number of courts have held that the right to rescission under TILA does not apply to a mortgagor's residential mortgage loan. See De Jose, 2011 WL 1539656 at *7; Perez , 2011 WL 3809808 at *13; Saldate v. Wilshire Credit Corp., 268 F.R.D. 87, 96 (E.D. Cal. 2010); Weingartner v. Chase Home Fin., LLC, 702 F. Supp. 2d 1276, 1286 (D. Nev. 2010); Lingad v. Indymac Fed. Bank, 682 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010); Infante v. Bank of Am. Corp., 680 F. Supp. 2d 1298, 1306 (S.D. Fla. 2009); Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1042 (E.D. Cal. 2009); Kamara v. Columbia Home Loans,

10

LLC, 654 F. Supp. 2d 259, 264 (E.D. Pa. 2009). As such, Green has no claim for rescission under TILA.

### B. Declaratory Judgment to Quiet Title

A party asserting a quiet title claim must plead and prove that he has superior title to the property. State of Maine v. Adams, 277 Va. 230, 238, 672 S.E.2d 862, 866 (Va. 2009). "An action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." Id.

There is no issue as to the title to the property in this case. Green is the sole owner of the property, and as such, he executed both the Deed of Trust and the Note.[6] The Note, which lists Wachovia as "Lender," provides that the "Lender" may transfer the Note. (CitiMortgage's Memorandum in Support of Motion to Dismiss, Ex. B, Dkt. # 13-2.) CitiMortgage presented the original Note in open court on June 17, 2011, and represents that it is the holder of the Note. In short, there is nothing in the pleadings or documents related to the financing of Green's home that reasonably suggests that CitiMortgage has no rightful claim to the property at issue or that Green has superior title to the property.

Green appears to argue that CitiMortgage has no rights under the Note as Wachovia is the lender of record identified in the Deed of Trust filed in the Rockingham County Circuit Court. Wachovia responds that Green's Note contains a blank endorsement from Wachovia, which permits the entity currently holding the Note, CitiMortgage, to enforce it, regardless of whether the transfer was documented in the Circuit Court Clerk's Office.

---

[6] In considering a motion to dismiss under Rule 12(b)(6), the court may "consider the complaint itself and any documents that are attached to it." CACI Intl'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009). Plaintiff did not attach a copy of the Note to the Complaint. However, the court may also consider a document submitted by the defendant if such document "was integral to and explicitly relied on in the complaint and [if] the plaintiff[] do[es] not challenge its authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999)).

11

Virginia law has long held that negotiable instruments, like mortgage notes that are endorsed in blank, may be freely transferred. Horvath v. Bank of N.Y., N.A., 641 F.3d 617, 621 (4th Cir. 2011) (citing Whitworth v. Adams, 26 Va. 333 (1827). Thus, whoever possesses an instrument endorsed in blank has full power to enforce it. Horvath, 641 F.3d at 621. The Note at issue, a copy of which CitiMortgage attached to its motion to dismiss, contains a blank endorsement from Wachovia. The original Note with blank endorsement was presented to the court at the June 17, 2011, hearing. The Note provides, "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (CitiMortgage's Memorandum in Support of Motion to Dismiss, Ex. B, Dkt. # 13-2.) Similarly, the Deed of Trust asserts that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Amended Complaint, Ex. B, Dkt. # 3-2, at 12.) Under established Virginia law, the fact that no assignment of the Deed of Trust was filed in the Rockingham County Circuit Court Clerk's Office does not constrain CitiMortgage's ability to assert its remedies under the Note signed by Green. In Horvath, the Fourth Circuit Court of Appeals rejected a similar argument, reasoning as follows:

> The principal problem with this argument is that it is inconsistent with Virginia law. While Virginia allows parties to transfer securities like the deed of trust, it does not require them to record such transfers in the land records. Indeed, Va. Code Ann. § 55-66.01 suggests that the assignor of a deed of trust "at its option, *may* cause the instrument of assignment to be recorded," but goes on to make clear that "[n]othing in this statute shall imply that recordation of the instrument of assignment or a certificate of transfer is necessary in order to transfer to an assignee the benefit of the security provided by the deed of trust." Va. Code Ann. § 55-66.01 (emphasis added). In other words, parties may elect to record the transfer in the land records, but their failure to do so does not undermine the transaction in any way.

Horvath, 641 F.3d at 626 (emphasis in original). As such, Green's quiet title declaration is meritless.[7]

### C. Virginia Consumer Protection Act ("VCPA")

Green asserts a VCPA claim against Workable Solutions[SM], which he alleges to be an "unregulated subsidiary of Citimortgage Inc." (Amended Complaint, Dkt. # 3, at ¶ 4.) Green contends that Workable Solutions[SM] violated the VCPA "after it instructed Green to make lower mortgage payments and then failed to make payments under the alleged mortgage or deed of trust as the payments [became] due, as it agreed to do." (Amended Complaint, Dkt. # 3, ¶ 49.) Under the VCPA, it is unlawful to use any "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . . ." VA. CODE ANN. § 59.1-200(A)(14). However, the VCPA specifically excludes from its coverage "mortgage lenders," VA. CODE ANN. § 59.1-199, defined as "any person who directly or indirectly originates or makes mortgage loans." VA. CODE ANN. § 6.2-16009; see Jefferson v. Briner, Inc., 2006 WL 1720692, at *10 (E.D. Va. June 21, 2006) (Defendants "are entitled to judgment on the VCPA claim because mortgage lenders are exclusively regulated by the State Corporation Commission and not subject to oversight by private parties in an action such as this.").

Green attempts to salvage his VCPA claim by arguing that Workable Solutions[SM] is "not a licensed mortgage lender or servicer" and therefore does not fall under the exclusions in the VCPA. (Amended Complaint, Dkt. # 3, at ¶ 46.) CitiMortgage counters that "'Workable Solutions' is not a subsidiary of Citigroup, Inc. or any other entity – indeed, it is not an entity at

---

[7] The court will also grant the defendants' motion to dismiss regarding Green's motion for lis pendens. Green indicated at oral argument that he was abandoning his motion for lis pendens, stating, "I don't think there is an action [for lis pendens], per se." (Dkt. # 37, at 48.) Moreover, the filing of a lis pendens motion neither creates nor enforces a lien. Rather, it serves merely as "notice of the pendency of a suit to any one interested and a warning that he should examine the proceedings to ascertain whether the title to the property was affected or not by such proceedings." Green Hill Corp. v. Kim, 842 F.2d 742, 744 (4th Cir. 1988) (quoting Harris v. Lipson, 167 Va. 365, 372, 189 S.E. 349, 352 (1937)).

all. Rather, it is a fictionalized construct fabricated by plaintiff in a transparent attempt to avoid the express provisions of the VCPA." (CitiMortgage's Memorandum in Support of Motion to Dismiss, Dkt. # 13, at 8-9.) CitiMortgage asserts that "Workable Solutions" is the name of its application program for mortgage customer hardship assistance. (Id. at 9.)

Green alleges that he had many contacts with counselors at Workable Solutions$^{SM}$ who repeatedly misrepresented to him that his "loan modification under HAMP was imminent . . . ." (Amended Complaint, Dkt. # 3, at ¶ 23.) No affidavits or declarations have been filed regarding the specific character of Workable Solutions$^{SM}$, its relationship to CitiMortgage, or its involvement with Green. On this record, therefore, the court cannot determine to what Workable Solutions$^{SM}$ refers, nor is its role in the Green loan modification process clear. As such, at this stage, the court cannot determine whether Workable Solutions$^{SM}$ is simply a name or service mark as CitiMortgage contends, or whether it is a separate entity susceptible to a claim under the VCPA as Green contends. Green alleges that persons associated with Workable Solutions$^{SM}$ made repeated misrepresentations to him regarding the status of his loan modification. Because the record is unclear as to the structure and role of Workable Solutions$^{SM}$, further factual development is necessary. As such, CitiMortgage's motion to dismiss the VCPA claim will be denied.

### D. Lanham Act

Green argues that he "has a commercial and competitive interest because of his reliance on defendants['] false advertisement that induced a prolonged wait for an alleged loan modification[ and a]s a direct result [he] was denied his right to pursue other financing . . . and was induced into default." (Amended Complaint, Dkt. # 3, at ¶ 54.) It is clear that Green is not

14

a competitor of defendants and has sustained no commercial injury. Rather, his circumstance is that of a consumer of a residential loan.

"[A] consumer does not have standing under the Lanham Act to sue for false advertising." Made in the USA Found. v. Phillips Foods, Inc., 365 F.3d 278, 281 (4th Cir. 2004). In fact, "no court has held that a consumer has standing." Foster v. Wintergreen Real Estate Co., 363 F.App'x 269, 275 (4th Cir. 2010). Instead, the "Lanham Act is 'a private remedy [for a] commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising.'" Id. (quoting Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1139 (4th Cir. 1993)); see also Barrus v. Sylvania, 55 F.3d 468, 470 (9th Cir. 1995) ("[I]n order to satisfy standing the plaintiff must allege commercial injury based upon a misrepresentation about a product, and also that the injury was 'competitive,' i.e., harmful to the plaintiff's ability to compete with the defendant."). As such, Green has no standing to assert a Lanham Act claim against defendants.

### E. Usury

On June 16, 2011, Green filed a motion for summary judgment, contending that "the note that was incorporated into an agreement to extend credit on November 14, 2009 is usurious." (Green's First Reply Brief and Motion for Summary Judgment, Dkt.# 28, at 2.) Green's Amended Complaint makes no usury claim; therefore, the court must examine whether it would be futile to grant Green leave to amend to raise a usury claim or illegality defense. Relying on Swindell v. Federal National Mortgage Association, 330 N.C. 153, 409 S.E.2d 892 (N.C. 1991), Green alleges that "[Wachovia] knew that a 5% penalty was usurious under the laws of North Carolina . . . and that the laws of North Carolina determined the definition of usury in Virginia and in any other state. . . . Green should be discharged from all obligations under the note except

15

for the $157,000 principal amount." (Green's First Reply Brief and Motion for Summary Judgment, Dkt. # 28, at 6.) Defendants argue that an amendment to include a usury claim under North Carolina law would be futile as Green's loan was subject to Virginia law, which allows a late fee of up to five percent.

It is clear that Virginia law, and not North Carolina, applies to Green's loan. The property financed is located in Harrisonburg, Virginia, and the Deed of Trust calls for Virginia law, stating: "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." (Amended Complaint, Ex. B, Dkt. # 3-2, at ¶ 16.) Although the Note does not have a choice of law clause, it states that it is a "Virginia Fixed Rate Note," and it was executed by Green on May 16, 2002, in Harrisonburg, Virginia. The late charge complained of by Green was not usurious under Virginia law, which permits a late charge of five percent. See VA. CODE ANN. § 6.2-400

An amendment is futile where it would fail to withstand a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Alt. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Accordingly, "[l]eave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986).

Because North Carolina usury law does not apply to Green's loan and the five percent late fee was lawful in Virginia, an amendment to include a usury claim under North Carolina law

would be both implausible and futile.  Accordingly, Green's motion for summary judgment and motion for leave to amend to include a usury claim will be denied.

### III

In sum, with the exception of the VCPA claim concerning Workable Solutions<sup>SM</sup>, Green's Amended Complaint fails to state a claim upon which relief may be granted.  As such, CitiMortgage's motion to dismiss will be granted as to all claims except the VCPA claim.

Accordingly, CitiMortgage's motion to dismiss (Dkt. # 12) is **GRANTED** as to Green's TILA, Lanham Act, Quiet Title, and Lis Pendens Claims and **DENIED** at this time as to Green's VCPA claim.  Green's motion for summary judgment (Dkt. # 28) is **DENIED**, and plaintiff's motion to amend to include a usury claim (Dkt. # 28) is **DENIED** as the North Carolina usury statute has no application to this case.

Finally, at least one other court in this circuit has concluded that facts similar to those alleged by Green may present other legal claims warranting discovery and further consideration.  See Allen v. CitiMortgage, Inc., 2011 WL 3425665 (D. Md. Aug. 4, 2011).  Given Green's pro se status, the court will allow him an opportunity to file a Second Amended Complaint against CitiMortgage within (14) days of the date of this Memorandum Opinion.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to plaintiff Green and all counsel of record.

Entered:  November 21, 2011

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge